UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DALY and MICHAEL DOTSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DANONE WATERS OF AMERICA, LLC,<br><br>Defendant. | No. 24 C 2424<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Michael Daly and Michael Dotson allege that Danone Waters of America violates Illinois and California state consumer fraud statutes by labeling its Evian spring water as "natural" because it contains microplastics that leach from the bottle into the water. Danone has filed a motion to dismiss for failure to state a claim. R. 18. That motion is granted.

"Spring water" is federally regulated. *See* 21 C.F.R § 165.110(a)(2)(vi). For that reason, any consumer fraud claim about "spring water" brought under a state statute must seek to enforce a requirement "identical" to the requirements imposed by federal regulation or else it is preempted for being in conflict with the regulation. *See* 21 U.S.C. § 343-1(a)(5); *see also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020) ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test; identity is. Thus, when a standard of identity lists labeling

disclosures that are affirmatively required, state law may not tack on further required disclosures that the federal standard does not mention.").

Plaintiffs argue that, because the federal regulation defining "spring water" does not also define the word "natural," or otherwise impose a requirement regarding use of the term "natural" in a label, there is no preemption concern and they are free to bring their claims that spring water containing microplastics is not "natural." Plaintiffs distance their claims from a claim about the definition of "spring water." *See* R. 20 at 4 (where Plaintiffs state in their brief that the "focus" of their "claims in this case are on the use of the term 'natural' not the term 'spring water'"). This is likely because, as Danone points out, the regulation does not mention microplastics, which according to Danone, means that the regulation does not impose a requirement regarding microplastics, thereby preempting any claim which, like Plaintiffs', attempts to impose a microplastic requirement on labels for "spring water." Thus, Plaintiffs' "focus" their claims on the terms "natural."

The problem with Plaintiffs' argument is that the terms "natural" and "spring water" cannot be separated. The regulation uses the word "natural" seven times, and each instance is used to describe the source of the "spring water":

(1) "an underground formation from which water flows naturally to the surface";

(2) "a natural force causing the water to flow;"

(3) "the natural spring";

(4) "the water that flows naturally to the surface";

(5) "water must continue to flow naturally to the surface";

2

(6) "the spring's natural orifice"; and

(7) "the natural orifice of the spring."

*See* 21 C.F.R. § 165.110(a)(vi).[1] In other words, the plain language of the regulation defines "spring water" as, in part, the water that is harvested from a "natural spring" (i.e., a "natural flow" through a "natural orifice"). As long as water comes from a "natural spring" it can be labeled "spring water," and by extension "natural." The regulation imposes no further requirement for use of the word "natural" in a label. And any claim that imposes a requirement for use of the word "natural" beyond proper identification of the water's source goes beyond the regulatory requirements and is thus preempted.

The Court's finding that Plaintiffs' claims are preempted comports with at least three other cases that have addressed consumer fraud claims based on the alleged presence of microplastics in federally regulated "bottled water," of which

---

[1] Here's the entire regulatory provision: "The name of water derived from an underground formation from which water flows naturally to the surface of the earth may be 'spring water.' Spring water shall be collected only at the spring or through a bore hole tapping the underground formation feeding the spring. There shall be a natural force causing the water to flow to the surface through a natural orifice. The location of the spring shall be identified. Spring water collected with the use of an external force shall be from the same underground stratum as the spring, as shown by a measurable hydraulic connection using a hydrogeologically valid method between the bore hole and the natural spring, and shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth. If spring water is collected with the use of an external force, water must continue to flow naturally to the surface of the earth through the spring's natural orifice. Plants shall demonstrate, on request, to appropriate regulatory officials, using a hydrogeologically valid method, that an appropriate hydraulic connection exists between the natural orifice of the spring and the bore hole." 21 C.F.R. § 165.110(a)(vi).

3

"spring water" is one type. *See Slowinski v. BlueTriton Brands, Inc.*, 2024 WL 3757097, at *11 (N.D. Ill. Aug. 9, 2024) (claim that it is a misrepresentation to label water containing microplastics as "natural spring water"); *Bruno v. BlueTriton Brands, Inc.*, 2024 WL 2794098, at *3 (C.D. Cal. May 6, 2024) (claim that it is a misrepresentation to label water containing microplastics as "100% spring water"); *Baker v. Nestle S.A.*, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019) (claim that it is a misrepresentation to label water containing microplastics as "purified water"). Although two of those three courts were focused on different label terms—i.e., "100%" and "purified"—all three courts found that the requirements for proper use of the label terms could not be separated from the regulations for the particular type of "bottled water." In other words, a claim based on falsely using the descriptive term in a label (in this case, "natural") could not impose any requirements beyond those imposed by the regulation for the type of bottled water in question (in this case, "spring water"). As the district court in *Slowinski* put it with regard to "natural spring water," "[s]aying that it is not 'natural' spring water is the same thing as saying that it is not 'spring water.' There is no daylight between challenging what 'spring water' means and challenging what 'natural spring water' means. The argument goes to the essence of what it means to be spring water." *Slowinski*, 2024 WL 3757097, at *12.

While this Court agrees with the ultimate findings of preemption made by those other courts, this Court respectfully disagrees with their reasoning. The other courts based their findings on the general proposition that the federal "bottled water" regulations (including the definition of "spring water") do not mention microplastics.

4

The other courts found that, absent mention of microplastics in the regulations, the regulations cannot impose any labeling requirements concerning the presence of microplastics in the water. *See, e.g., Slowinski*, 2024 WL 3757097, at *11 ("Plaintiffs believe that the water isn't 100% natural spring water if it contains microplastics. But the FDA defined what spring water is. And the definition of spring water makes no mention of teeny-tiny bits and pieces of itty-bitty plastic. The FDA's standard of identity imposes no requirements at the molecular level. Plaintiffs cannot use state law to tack on additional requirements."). In other words, according to the other courts, if the regulation has nothing to say about the presence of microplastics in "spring water," and "spring water" is "natural," then the regulation has nothing to say about the presence of microplastics in "natural spring water," and any claim that "spring water" containing microplastics is falsely labeled as "natural" is preempted.

It is unnecessary, however, to address whether the regulation imposes any requirement regarding microplastics in order to determine the preemptory scope of the term "natural." As discussed, this Court and the other courts to have already addressed this issue all find that the preemptory scope of the terms "natural" and "spring water" are inextricably intertwined because "spring water" is harvested from "natural springs." "Spring water" that is harvested from a "natural spring" is "natural." And any claim that imposes a requirement beyond this proper identification of the water's *source* in order to properly label "spring water" as "natural" is preempted. Whether the regulation imposes requirements regarding the

5

*content* of "spring water," including whether the presence of microplastics might violate that those requirements, is irrelevant to this logic.[2]

## Conclusion

Therefore, Danone's motion to dismiss [18] is granted and Plaintiffs' claims are dismissed without prejudice. Plaintiffs have leave to file a second amended complaint by December 6, 2024. Plaintiffs should file a status report stating whether they intend to file a second amended complaint by November 20, 2024. If Plaintiffs do not file a second amended complaint by December 6, 2024 this dismissal will be with prejudice and judgment will be entered in Danone's favor.

ENTERED:

*[signature: Thomas M. Durkin]*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 5, 2024

---

[2] The Court notes that it's finding here is in tension with Plaintiffs' argument that unlike "spring water," which they say is "clearly related to the *source* of the water," the term "'natural' is clearly a statement about the quality and *content* of the water." R. 20 at 4 (emphases added). But this is the precise opposite of the regulation's plain language, which as discussed defines "natural" with reference to the water's source, while also defining "spring water," in part, with reference to the water's content as compared to the content of water coming from a "natural spring." *See* 21 C.F.R. § 165.110(a)(vi) ("spring water . . . shall have all the physical properties, before treatment, and be of the same composition and quality, as the water that flows naturally to the surface of the earth"). Curiously, Plaintiffs' insistence that "natural" is a descriptor of the water's *content* is what dooms their claim according to the reasoning of the other courts to have addressed this issue, because those courts found that the regulation does *not* impose a requirement regarding the content of microplastics in "spring water." As discussed, however, this Court finds that it is unnecessary to address whether the regulation imposes requirements regarding the content of microplastics to determine the preemptory scope of the word "natural" because the regulation defines "natural" as a descriptor of the water's source, not its content.